54 CCPA

**Application of Heinz JAGER.**
**Patent Appeal No. 7783.**

United States Court of Customs
and Patent Appeals.
April 20, 1967.

Samuel Lebowitz, Washington, D. C., for appellant.

Joseph Schimmel, Washington, D. C. (Joseph Nakamura, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, SMITH and ALMOND, Judges, and WILLIAM H. KIRKPATRICK,* Senior District Judge.

RICH, Judge.

This appeal is from a decision of the Patent Office Board of Appeals, affirming the examiner's rejection of claims 1–4 in application serial No. 127,049,

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

filed July 26, 1961, entitled "Apparatus for Drying and Preheating Fine Granular Material, Particularly Cement Raw Material." No claim has been allowed.

The invention is an apparatus in which heat is exchanged between exhaust gases from a rotary kiln and fine granular feed material, e. g., raw material for cement manufacture. It includes a central cyclone surrounded on the same level by smaller cyclones, arranged to provide a compact heat exchange system, the central cyclone and smaller cyclones constituting the first and second stages, respectively. The drawing, reproduced below, shows an embodiment of the invention in which two central cyclones, 2, 2', and their associated smaller cyclones, 3, 3', are arranged one above the other. The rotary kiln is shown at 1.

Claim 4, which is directed to the illustrated embodiment, on page 854, reads:

4. Apparatus for drying and heating fine-granular material, such as cement raw material, comprising two groups of dust-separator cyclones disposed one above the other, each of said two groups having a central cyclone and a plurality of outer cyclones of smaller diameter and volume than said central cyclone at substantially the same level as the latter, said central cyclone having a number of tangential gas inlet conduits equal to the number of said outer cyclones and distributed about the periphery of said central cyclone, said central cyclone having a gas outlet at the top and a dust outlet at the bottom, said outer cyclones being distributed about the periphery of said central cyclone and having each a tangential gas inlet duct and a gas outlet at the top and a dust outlet at the bottom, said dust outlets of said outer cyclones being connected to said respective gas inlet conduits of said central cyclone, a distributor adjoining said gas outlet of said central cyclone, said gas inlet ducts of said outer cyclones each having one end thereof adjacent to said distributor and the opposite end thereof connected to the respective outer cyclone to receive gas from the outlet of said central cyclone; material supply means connected with said distributor of the upper one of said two groups, said dust outlet of said central cyclone in said upper group being connected with said distributor in the lower group, said gas outlets of said outer cyclones in said lower group being connected with said gas inlet conduits of said central cyclone in said upper group, and hot-gas supply means connected to said gas inlet conduits of said central cyclone in said lower group.

Claims 2 and 3 are dependent on claim 1 and define apparatus in which the details of the duct arrangement are more precisely recited.

The apparatus is said to be advantageous in that it may be housed in buildings of less height than those required for prior art apparatus.

The references relied on are:

| | | | |
|---|---|---|---|
| Helming | 3,083,472 | Apr. 2, | 1963 |
| Muller et al. | 2,648,532 | Aug. 11, | 1953 |
| Bryk et al. | 2,853,361 | Sept. 23, | 1958 |

Helming discloses apparatus in which cement raw materials being fed to a rotary kiln are preheated. It includes a central shaft around which, at one or more levels, small cyclones are disposed. Waste gases from the kiln flow into the shaft, mix with the raw material, and then flow with entrained raw material into the small cyclones. The exhaust ducts from the shaft are preferably tangential to it, imparting a cyclonic effect to the flow within the shaft.

Muller et al. describe apparatus for similarly heating cement raw material with waste gases from the kiln. The arrangement of cyclone separators, ducts, etc., different from those of appellant and Helming, is cited to show that it is old to direct dust from outer cyclones to the intake ducts of the central cyclone, to utilize distributors to scatter the raw materials into the gas stream, and to use separate channels to feed the rotary kiln and to carry off waste gases.

Bryk et al. disclose apparatus in which exhaust gases containing finely-divided material flow through a descending duct from the top center of one cyclone to the inlet side of another.

The starting point for the examiner's analysis was thus stated:

This [Helming] reference shows a structure almost identical to that of appellant and intended for identical use. A central column * * * is divided into two superposed cyclones corresponding to the cyclones * * of appellant. Helming's cyclones are such and produce rotary motion of the gases therein by induction in the same manner as appellant's cyclones.

In affirming, the board said:

We agree with the Examiner * * that claims 1, 2 and 4 do not patent-

ably distinguish from the Helming disclosure modified as suggested by Muller et al. by connecting the dust outlet pipes of the outer cyclones with the gas inlet means of the central cyclone. Also, that it would be obvious, relative to claim 3, as suggested by Bryk et al. to incline the gas conduits from the distributor to the outer cyclones.

We also agree that the disclosure of the swirling gases in the central shaft of Helming would make obvious to one of ordinary skill an apparatus in which cyclones are substituted for Helming's central shaft. We think that the expedient of locating the smaller cyclones on the same level, while not required by Helming, is likewise made obvious thereby since that part of the central shaft analogous to the central cyclone is shown in Helming on the same level as the smaller cyclones.

Appellant, of course, disagrees with each of these conclusions. He seems, however, to urge most strongly the inability of the references "to meet the important limitation of the distributor [shown at 5 in the drawing]." On this point the board held:

> The recitation in the claims that the distributor "adjoins" the gas outlet of the central cyclone is so broad as to apply to any structure at the juncture of Helming's central shaft and the exhaust gas pipes whereby the gas and solids are guided to the outer cyclones.

Appellant claims that this was error, arguing that the examiner relied on an element in Helming which does not adjoin the gas outlet. The examiner, speaking to this point, said:

> Finally, appellant places great emphasis on his distributors 5. Helming is considered to show equivalent structure. However, the distribution of falling dusts laterally into rising gas streams by means of distributors placed at the outlets of dust discharging conduits is old. Muller et al. shows this * * *. So does Helming * * *. It is therefore considered old and obvious to do this at any and every point where dust is discharged centrally and axially into a rising gas stream.

It is apparent to us that separate elements in Helming correspond to appellant's distributor as it affects, respectively, the waste gases and the raw material. The unobviousness of doing what is claimed is not apparent.

There is, of course, no need to show correspondence, element for element, between the Helming apparatus and that of appellant. We think it clear that the minor differences between the Helming apparatus and that claimed by appellant do not render the latter unobvious, especially since the secondary references show similar techniques in the same field.

The decision of the board is affirmed.

Affirmed.